**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 1:24-cr-00187-MPB-KMB |
| ) | |
| CURTIS DOUGHTY, ) | |
|     Defendant. ) | |

## **DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Doughty's case comes forward for disposition with a calculated United States Sentencing Guideline total offense level of 13 and a criminal history category of I. The advisory Guideline range falls in Zone C at 12-18 months. Document 20, PSI ¶ 51. A sentence that strictly follows the advice of the Guidelines where the advisory range falls within Zone C might include a split sentence, directing half of the Guideline minimum to be served in custody. USSG § 5C1.1(d). The defense submits that the relevant 18 U.S.C. § 3553(a) factors would support a sentence of probation conditioned upon a term of community confinement, house arrest, or community service.

The United States Sentencing Commission maintains a Judiciary Sentencing Information tool, useful for considering defendants sentenced under the same Guideline with the same final offense level and criminal history score over a 5-year period. The result applicable to the sentencing decision in this case is:

> During the last five fiscal years (FY2020-2024), there were 28 defendants whose primary guideline was §2H1.1, with a Final Offense Level of 13 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 18 defendants (64%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 9 months and the median length of imprisonment imposed was 6 months.
> https://jsin.ussc.gov/analytics/saw.dll?Dashboard

That is, fully a third of all defendants convicted of the same offense over the last 5 years facing the same advisory Guideline range received non-jail sentences. It is submitted that Mr. Doughty's case likely presents a lower-than-average level of culpability upon consideration of his personal history and characteristics and the precise nature of the offense.

Mr. Doughty's childhood and adolescence were a success story, driven by hard-working and devoted parents. He graduated from high school at the age of 19 and thereafter earned a technical certificate in criminal justice and an associate's degree in criminal justice – all with an eye toward a career in law enforcement. He worked as a correctional officer from 2020 until the date of this offense in 2024. He is in good health, drinks infrequently, and does not use illegal drugs.  He worked for Genisis Security in Indianapolis until shortly after his initial hearing in this case and had to resign because the job requirements became problematic without the ability to carry a firearm.   He has thereafter worked as a DSP delivery driver delivering packages for Amazon. He enrolled in160 Trucking Academy, graduating with his CDL license on April 10, 2025.   He has a job offer pending in the trucking industry and several other applications pending.

The offense conduct was, of course, indefensible. The factual recitation set out in the Government's Sentencing Memorandum (Document 28) is accurate. Mr. Doughty was part of a Special Emergency Response Team (SERT) at the Henry County Detention Center assigned to a planned "shakedown" search of a pod.   The inmates from that pod were assembled in a recreation room and told to face the wall while the shakedown was conducted. The victim's body was facing the wall. His head was not. Mr. Doughty's reaction (a pepper ball shot to the back) was an inappropriate spur of the

moment response to a perceived failure to follow instructions. His actions admittedly involved the unlawful use of force and caused bodily injury, although that injury was not substantial. The picture of the victim's back embedded in the Government's Memorandum depicts the extent of the injury – a red welt indistinguishable from an insect bite. The temporary presence of pepper spray in the room was an incrementally additional injury. The defense does not attempt to minimize the injury or harm but would argue that this injury likely falls at the low end of the spectrum of similar offenses.

A felony conviction is itself a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.   Mr. Doughty will never again lawfully possess a firearm and will never again be employed as a corrections officer or in law enforcement in any capacity.   To the extent that the sentence should consider the need to protect the public and specific deterrence to Mr. Doughty, a felony conviction ensures that Mr. Doughty will not be in a position to commit a similar offense. He will be permanently out of law enforcement and, hopefully, marking a new path in the trucking industry.

The Government's Memorandum addresses the need to avoid unwarranted sentencing disparities in sentencing by comparing this case to a universe of one - *United States v. Jorge Alberto Mateos*, 1:21-cr00371-TWP-MG. It cannot seriously be considered that an individualized sentence imposed in a single case with unique circumstances should be considered as the standard by which unwarranted disparities are measured. The circumstances in *Mateos* were markedly more serious. The stipulated offense conduct included:

    a.    On or about September 9, 2021, at approximately 8:40 p.m., Defendant Jorge Mateos was a Detention Deputy employed by the Marion

County Sheriff's Office. Deputy Mateos' duties that night included securing and watching over pretrial detainees housed at the Marion County Jail located in Indianapolis, Indiana, including detainee C.M.

      b.    During Deputy Mateos' shift, deputies at the jail learned that pretrial detainee C.M., who was locked inside his cell, still had his jail-issued shoes with him, which was not permitted because C.M. was on suicide watch. From outside the cell, Deputy Mateos gave detainee C.M. verbal commands to give deputies his shoes, and detainee C.M. did not comply. After several attempts to get C.M. to give deputies his shoes, another deputy told CM. that officers were going to come into the cell and take the shoes and instructed him to back away from the door so that they could place him in handcuffs. Detainee C.M. then kicked off his shoes and sat down in the corner of the cell.

      c.    Deputy Mateos and several other detention deputies then entered the cell. Deputy Mateos walked past the shoes, went over to detainee C.M., who was still seated in the comer and said something to the effect of, "When a deputy tells you to do something, you need to do it." Deputy Mateos then struck detainee C.M. in the facial area multiple times with a closed fist, during which time detainee C.M. did not try to resist or fight back. Detainee C.M. fell to the ground and Deputy Mateos continued to deliver several additional strikes.

      d.    Another deputy would testify that she then attempted to intervene by tapping Deputy Mateos on the shoulder in order to try and get him to disengage. In response, Deputy Mateos briefly walked away, and other deputies secured detainee C.M. in handcuffs.

      e.    After detainee C.M. was handcuffed, Deputy Mateos returned to the cell and struck C.M. several more times in the face, despite the fact that C.M. was not resisting or posing any threat to officers. Other deputies again intervened to stop Deputy Mateos from continuing to strike detainee C.M.   1:21-cr-00371-TWP-MG, Document 9.

The final offense level in *Mateos* was stipulated at 15 after a reduction for acceptance of responsibility, 2 levels higher than the offense level applicable to Doughty's case because of a "restraint of victim" upward adjustment. The government agreed to recommend a sentence at the low end of the applicable Guideline range (18-24 months). 1:21-cr-00371-TWP-MG, Document 9.

The Judiciary Sentencing Information tool provides a broader spectrum to measure disparities in sentencing.

18 U.S.C. § 3553(a)(3) directs the Court to consider "the kinds of sentences available." Prison is, of course, not the only kind of sentence available. Conditions to supervision such as a term of community confinement, house arrest, or community work service are in the Court's toolbox. Considering the impulsive nature of Mr. Doughty's offense, the relatively minor (although not insignificant) nature of the injury inflicted, and the full picture of the rest of Mr. Doughty's life, a sentence of probation with conditions would satisfy the directives of 18 U.S.C. § 3553(a).

Respectfully submitted,

*William H. Dazey, Jr.*
William H. Dazey, Jr.
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
317-383-3520

## **CERTIFICATE OF SERVICE**

I certify that on April 29, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*William H. Dazey, Jr.*
William H. Dazey, Jr.